UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                 :
DUMANN REALTY, LLC, PROFITECHNIC  :
LIMITED, LLC, LAWRENCE LUK and MAC :
LUK,                                                       :                09 Civ. 7651 (JPO)
                                             Plaintiffs,:      MEMORANDUM AND
                                                         :                          ORDER
                        -against-                      :
                                                         :
FREDERICK FAUST,                        :
                                                         :
          Defendant/Counterclaim Plaintiff,: 
                                                         :
                        -against-                     :
                                                         :
DUMANN REALTY, LLC, RICHARD DU and :
MAC LUK,                                        :
                           Counterclaim Defendants:
                                                         :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Dumann Realty, LLC ("Dumann" or "the LLC"), Profitechnic Capital Limited ("Profitechnic"), Lawrence Mac ("Mac"), and Mac Luk (together, "Plaintiffs") brought this action against Dumann member Frederick Faust ("Faust" or "Defendant") asserting nine claims under New York State Law, including breach of Dumann's Operating Agreement and breach of the common law duty of good faith and fair dealing. Faust has filed several counterclaims against Plaintiffs, also under New York law.

       Defendant has filed a motion for summary judgment, which is now fully briefed. However, this Court has determined that it lacks subject matter jurisdiction over this matter, and thus must dismiss this case *sua sponte*, without reaching the merits of Defendant's motion.

1

I.  **Subject Matter Jurisdiction**

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. [J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003) (internal quotation marks and citations omitted; alteration in original).

"Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez v. Thaler*, 132 S.Ct. 641, 648 (2012). Moreover, if courts become concerned about their jurisdiction to hear cases, they have "an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Hernandez ex rel. Hernandez v. Shinseki*, 131 S.Ct. 1197, 1202 (2011) (citation omitted); *see also Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (stating that "a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the district court" (citation omitted)). To be sure, if it is determined late in the life of a case that no subject matter jurisdiction exists, "many months of work on the part of the attorneys and the court may be wasted." *Henderson*, 131 S.Ct. at 1202. This, however, is a modest price to pay for the continued preservation of federalism. *Accord Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (explaining that the rules governing subject matter

jurisdiction "spring[] from the nature and limits of the judicial power of the United States" and are therefore "inflexible and without exception").

## II.     Diversity Jurisdiction in Cases Involving Limited Liability Companies

In their Second Amended Complaint, Plaintiffs allege that "[t]his Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of each of the parties and the amount in controversy." (Second Amended Complaint at ¶ 11.) Under 28 U.S.C. § 1332(a)(1), federal diversity jurisdiction exists where the matter is between "citizens of different States." Since *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806), it has been settled law that there must be complete diversity between all plaintiffs and all defendants.

A Limited Liability Company ("LLC") is completely diverse from opposing parties only if *all* of the members of the LLC are citizens of different states than *all* opposing parties. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,* 213 F.3d 48, 51 (2d Cir. 2000) ("defendants Bedford Partnership and Bedford LLC are, for diversity purposes, citizens of Florida because both entities have Florida members"); *Receivables Exch., LLC v. Hotton,* No. 11 Civ. 0292 (JS) (WDW), 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (explaining that, "for diversity purposes, an LLC is a citizen of every state that its members are citizens of" (citations omitted)); *Castillo Grand LLC v. Sheraton Operating Corp.,* No. 09 Civ. 7197 (RPP), 2009 WL 4667104, at *1 (S.D.N.Y. Dec. 9, 2009) ("For purposes of assessing diversity jurisdiction, an unincorporated entity such as a partnership or a limited liability company is deemed to be a citizen of all states of which its partners or members are citizens." (citation omitted)); *cf. Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990) (holding that, in the context of limited partnerships,

citizenship of limited partners had to be taken into account to determine diversity of citizenship among the parties).

In his recent submission to this Court, Richard Du avers that that, as of the filing of the initial Complaint on September 2, 2009, two of the original three members, Du and Luk, were both citizens of New York, while Faust, who is both an original member of Dumann and the defendant in this action, was a domiciliary of Pennsylvania. (Dkt. No. 96 ("the Du Affidavit") at ¶¶ 3, 5-6.)[1] Du states, however, that Faust "resigned as a member" of the LLC on March 18, 2009, over five months before the initial Complaint was filed. (Du Affidavit at ¶ 2.)[2] This begs the question whether Faust must be considered a member of Dumann for the purpose of determining whether the parties are completely diverse.

## III. State Law and LLC Membership

The question of whose citizenship constitutes part of the LLC's citizenship is ultimately governed by the law of the state of incorporation. This is illuminated in *CR Holding Company,*

---

[1] While the Second Amended Complaint alleges that Dumann has its "principal place of business" in New York State, that fact (as to an LLC) is entirely irrelevant to diversity jurisdiction. The Second Amended Complaint does not enumerate the citizenship of the members of Dumann at the time the suit was filed.
    On December 6, 2012, this Court issued an issued an Order to Show Cause why Plaintiff's Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction ("the Order"). The Order directed Plaintiffs to both "enumerate every Member of the LLC as of the original date of this action's filing, and . . . specify the *citizenship* of each Member." *Dumann Realty LLC v. Faust*, No. 09 Civ. 7651 (JPO), 2012 WL 6135020, at *1 (S.D.N.Y. Dec. 6, 2012). On December 19, 2012, Plaintiffs filed an affidavit by Richard Du. On December 28, 2012, Defendant filed an affidavit by Anthony R. Molé in reply. (Dkt. No. 97 ("Molé Affidavit").)

[2] As Defendant rightly notes (*see* Molé Affidavit at ¶¶ 4-7), the Du Affidavit's contention that Faust "resigned as a member" is problematic on its own terms. Du relies on paragraph 23 of Faust's Answer to the Second Amended Complaint for the proposition that Faust resigned from Dumann; however, that paragraph states not that Faust resigned, but that "on or about March 18, 2009, by letter, Faust indicated his *desire* to resign from Dumann and requested that Dumann's remaining members, Du and Luk, consent to his resignation." (Du's Affidavit, Ex. A at ¶ 23 (emphasis added).)

4

*LLP v. Campbell*, No. 11 Civ. 2051 (JWL), 2011 WL 2357649, at *3 (D. Kan. June 3, 2011), a case whose facts are remarkably similar to this case. *Campbell* concerned a dispute between several limited partnerships and their former partner, the defendant Campbell. The sole remaining partner, Renkemeyer, was a citizen of Kansas, while Campbell was a citizen of Missouri. In his motion to dismiss for lack of subject matter jurisdiction, Campbell argued

> that diversity is not complete because [Campbell] remains a partner of each of the plaintiff entities such that the plaintiff entities are citizens of both Kansas and Missouri, thereby destroying complete diversity . . . Plaintiffs, however, contend that Mr. Renkemeyer is the sole partner of each entity because Mr. Campbell has either withdrawn from the partnerships or, under the circumstances, should be deemed dissociated . . . .

*Id.* at *1.

In determining whether subject matter jurisdiction existed, Judge Lungstrum looked to the Kansas state law on partner withdrawal from limited partnerships, which provided that withdrawal was impermissible unless it was provided for by the partnership agreement. *Id*. at *2. "[B]ecause defendant is not permitted to withdraw as a limited partner of Renkemeyer Campbell LP under the agreement itself and, thus, by statute . . . ," Judge Lungstrum held, "defendant remains a limited partner . . . . That entity, then, is a citizen of both Kansas and Missouri, thereby destroying complete diversity." *Id*. at *3. In other words, despite Campbell's attempted withdrawal, the LLC remained a citizen of Campbell's place of citizenship.

Though less squarely on point, *Tri-County Metropolitan Transportation District of Oregon v. Butler Block, LLC*, No. 08 Civ. 259 (AA), 2008 WL 2037306 (D. Or. May 7, 2008), is also informative. In *Butler Block*, Judge Aiken wrestled with the question whether an Oregon plaintiff was completely diverse from the defendant, a parent LLC composed of a California citizen and a child LLC with one member, an Oregon citizen. The defendant LLC argued that its

5

Oregon LLC member did not destroy complete diversity, because the child LLC had been administratively dissolved under Oregon law for failure to pay its fees. *Id*. at *2. However, Judge Aiken held that neither Delaware state law[3] nor the parent LLC agreement permitted withdrawal of a member due to administrative dissolution. Further, "under Delaware law," as under New York law, "unless an LLC agreement provides otherwise, a member may not resign from a limited liability company prior to the dissolution and winding up of the limited liability company." *Id*. at *2 (internal quotation marks and citation omitted). Thus, even if Oregon no longer recognized the existence of the child LLC, the child LLC continued to exist under Delaware law, and the citizenship of its member destroyed diversity. *Butler Block*, then, underscores the principle laid out in *Campbell*: the law of the state of incorporation plays a central role in the determination of whether complete diversity can exist between an LLC and an opposing party.

Armed with *Campbell* and *Butler Block*, this Court can now turn to the case at hand. It is undisputed that Dumann, the LLC, was formed in New York and is governed by New York Limited Liability Company Law ("NYLLCL"). (*See* Dkt. No. 85, Ex. A ("Operating Agreement") at III § 1 ("Unless specifically set forth otherwise in the Articles of Organization or by amendment thereto, management of this Company shall be vested in the members, who shall be subject to all of the rights, duties, privileges and liabilities of the Managers, as set forth in the New York Limited Liability Company Law.") NYLLCL § 606(a) provides in relevant part:

> A member may withdraw as a member of a limited liability company only at the time or upon the happening of events specified in the operating agreement and in accordance with the operating agreement. Notwithstanding anything to the contrary under applicable law, unless an operating agreement provides otherwise, a member may not withdraw from a limited liability

---

[3] The defendant LLC was a Delaware LLC governed by Delaware law. *Id*. at *1.

> company prior to the dissolution and winding up of the limited liability company.

See also *Klein v. 599 Eleventh Ave. Co.*, 14 Misc.3d 1211(A), at *3 (N.Y. Sup. 2006) (explaining that "a member may withdraw from a limited liability company only as provided in its operating agreement. If the operating agreement is silent, a member may not withdraw prior to the dissolution of the company." (citations omitted)).

The Operating Agreement contains the following rules about withdrawal:

> A member may withdraw as a member of this Company with the vote or written consent of at least two-thirds in interest of the members, other than the member who proposes to withdraw as a member. If such consent is not given, a member may withdraw upon not less than six months prior written notice to this Company, provided such withdrawal does not breach this Operating Agreement, and the New York Limited Liability Company Law or any other contractual obligation between such proposed withdrawing member and this company or its other members. Should such breach occur, then the withdrawing member may be liable for damages as a result thereof.

(Operating Agreement at III, § 10.)[4] Read together, the NYLLCL and the Operating Agreement do not permit member withdrawal, unless (1) two-thirds consent is given or (2) the withdrawal occurs after six months' notice.

Here, Faust did not obtain two-thirds consent to withdraw. Nor did he provide six months' notice before withdrawal; indeed, this is the *very basis* of Dumann's contention that Faust breached the membership agreement. (*See* Second Amended Complaint at ¶¶ 17-18.)[5] Because Faust has not withdrawn under one of the two methods enumerated in the Operating

---

[4] Moreover, the Operating Agreement "has (no) specified date of dissolution . . . unless sooner dissolved pursuant to this Agreement or pursuant to the provisions of the [NYLLCL]." (*Id*. at § II, 7.)

[5] As Defendant's counsel notes, this puts Plaintiff "in a situation where any argument made in an attempt to support diversity subject matter jurisdiction would be counterproductive to their claim." (Molé Affidavit at ¶ 9.)

Agreement, his "resignation" from Dumann was, in short, ineffective.[6] Thus, when Plaintiffs brought this suit, Dumann's citizenship for diversity jurisdiction purposes was both New York and Pennsylvania. Pennsylvania, in other words, finds itself "on both sides of the 'v.' sign" in this matter, *Saavedra v. Boeing Co.*, 464 F. Supp. 2d 770, 771 (N.D. Ill. 2006), meaning that diversity of citizenship is incomplete.

The infirmity in this Court's subject matter jurisdiction over this case is a subtle one, which may explain why it has gone unnoticed throughout much of the litigation. Nevertheless, that infirmity divests this Court of the power to adjudicate this case as a matter of federal law.

## IV.     Conclusion

For the foregoing reasons, this case is DISMISSED *sua sponte* for lack of subject matter jurisdiction. The Clerk of the Court is directed to terminate the case and all pending motions.

SO ORDERED.

Dated: New York, New York
       January 3, 2013

_____
J. PAUL OETKEN
United States District Judge

---

[6] Moreover, Dumann sued Faust within six month of his resignation, meaning that the period during which the Operating Agreement anticipated Faust to be liable for consequential damages of the breach was still in effect. This underscores that, at the time this Complaint was filed, Faust was a member of the LLC for purposes of diversity jurisdiction.